# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 15, 2000 Session

## STATE OF TENNESSEE v. CURTIS EMERY DUKE

**Appeal as of Right from the Circuit Court for Marshall County**
**No. 13959      William Charles Lee, Judge**

_____

### No. M2000-00350-CCA-R3-CD - Filed March 14, 2001

_____

The appellant, Curtis Emery Duke, was convicted in the Marshall County Circuit Court of two counts of the sale of crack cocaine, one count of possession of crack cocaine with the intent to sell, two counts of criminal impersonation, and one count of failure to appear. The trial court sentenced the appellant to a total effective sentence of thirty-nine years. On appeal, the appellant raises the following issues for our review: (1) whether the evidence presented at trial was sufficient to sustain the appellant's convictions; (2) whether the trial court erred in failing to instruct the jury on the lesser-included offense of simple possession; and (3) whether the trial court erred in sentencing the appellant. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed as Modified.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

John B. Nisbet, III, Cookeville, Tennessee, Donna L. Hargrove[1] and Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, Curtis Emery Duke.

Paul G. Summers, Attorney General and Reporter, Russell S. Baldwin, Assistant Attorney General, W. Michael McCown, District Attorney General, and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On December 16, 1998, cooperating individual Donna Sanders informed agents with the 17th Judicial District Drug Task Force of a potential drug sale that evening at her residence in

---

[1] Donna L. Hargrove is referred to as "Donna Orr Hargrove" in the appellant's brief.

Lewisburg, Tennessee. Sanders told undercover agent Thomas Biele that he could purchase an "eight-ball", one-eighth of an ounce of crack cocaine, for $160. Prior to the meeting, Agent Biele obtained $200 from Assistant Director Shane Daugherty for the purchase of the crack cocaine. Agent Biele recorded the serial numbers from $160 of the money and took an additional $40 in the event the seller raised the price. Agent Kris Lewallen was to go with Agent Biele and pose as his "nephew." Agent Lewallen was given $100 to purchase crack cocaine, and he also recorded the serial numbers from the bills. Agents Biele and Lewallen arrived at Sanders' residence to purchase crack cocaine at approximately 7 p.m. Director Timothy Lane, Assistant Director Daugherty, and other agents of the task force were stationed in a vehicle approximately one block from the residence to act as a surveillance and apprehension team.

When Agent Biele and Agent Lewallen arrived at Sanders' trailer, Sanders informed them that the seller had not yet arrived.[2] The agents went into Sanders' trailer to wait. Raymond Ussery, another suspected drug dealer targeted by the Drug Task Force, soon arrived at the trailer. Sanders told Ussery that the agents were waiting because they wanted to purchase crack cocaine. Because Sanders did not have a telephone, Ussery went next door to the trailer of Randy "Cobb" Webster, another suspected drug dealer, to make a telephone call.

Approximately forty-five minutes after Ussery made his telephone call, the appellant and an unidentified individual arrived at Sanders' residence. The appellant proceeded to the back bedroom of the trailer and Ussery motioned for Agent Biele to join them in the bedroom. When Agent Biele joined the appellant and Ussery in the bedroom, the appellant asked Agent Biele what he wanted. Agent Biele told the appellant that he wanted an "eight-ball." The appellant pulled a clear plastic bag containing crack cocaine from his pocket and told Agent Biele that, because they had no scales with which to weigh the crack cocaine, he would give the agent the amount that was in the bag in exchange for $200. Agent Biele gave the appellant $200, including the bills whose serial numbers Agent Biele had previously recorded, and the appellant gave the baggie of crack cocaine directly to Agent Biele.

At that point, Agent Biele told the appellant that his "nephew," Agent Lewallen, also wanted to purchase crack cocaine. Ussery motioned for Agent Lewallen to join the trio in the bedroom. The appellant asked Agent Lewallen how much crack cocaine he wanted to purchase. Agent Lewallen informed the appellant that he wanted to buy $100 worth of crack cocaine. The appellant pulled from his pocket another clear plastic baggie containing a golf-ball-sized rock of crack cocaine. The appellant told Ussery that he needed a razor blade and a plate in order to cut the crack cocaine. Ussery obtained the items, and the appellant chopped a few pieces from the rock. The appellant gave the rocks to Agent Lewallen, and in exchange Agent Lewallen gave the appellant $100, consisting of the bills whose serial numbers Agent Lewallen had previously recorded. The appellant placed the money and the baggie containing the remaining crack cocaine into his pocket.

---

[2] At this point, the agents did not know the identity of the seller of the crack cocaine, who was later identified as the appellant, Curtis Emery Duke.

Following the transaction, Agent Lewallen went outside the residence to the agents' car and used a cellular telephone to call Assistant Director Daugherty to inform him that the sale was complete. Agent Lewallen also told Assistant Director Daugherty that the appellant still possessed a golf-ball-sized rock of crack cocaine and that the appellant would soon be leaving the residence in a truck, accompanied by an unidentified individual. Agent Lewallen described the truck to Assistant Director Daugherty and advised him that the appellant would be riding in the passenger seat. Agent Lewallen returned to the residence, where he and Agent Biele remained for a few minutes after the appellant and the unidentified man left so as not to arouse the suspicions of Ussery and Webster.

Soon after the appellant left the residence, Assistant Director Daugherty and Director Lane spotted the truck that Agent Lewallen had described. They pursued the truck in their vehicle and activated the blue lights. The truck pulled over in the parking lot of Sexton's Welding. The appellant ran from the truck to an area behind Sexton's Welding that was filled with thick vegetation. As Assistant Director Daugherty chased the appellant through the brush and briars, he observed the appellant reach into his pocket. The appellant then jumped down a ten-foot drop into a creek bed and crouched by a bush located in the creek bed. Assistant Director Daugherty followed. Director Lane pointed his flashlight at the appellant and ordered him to exit the creek bed with his hands up. The appellant complied. Director Lane handcuffed the appellant and searched his person, discovering a pager and $1,679 in the appellant's pockets but no crack cocaine. Upon his arrest, the appellant told the police that his name was Tyrone Duke.

Following the appellant's arrest, the police began a search for the golf-ball-sized rock of crack cocaine that Agent Lewallen had described. Officer James Whitsett of the Lewisburg Police Department assisted in the search. He discovered a clear plastic baggie containing a golf-ball-sized rock of crack cocaine located in the bush beside which the appellant had earlier crouched. Assistant Director Daugherty took possession of the crack cocaine.

On January 26, 1999, the appellant was scheduled to appear in court on charges relating to the events of December 16, 1998. The appellant did not appear at these proceedings. Subsequently, the appellant's brother, Tyrone Duke, informed police that the appellant, whom he identified as Curtis Emery Duke, had falsely identified himself as Tyrone Duke. The police discovered the appellant's true identity, located the appellant, and took him back into custody.

At trial, Donna Flowers, a forensic chemist with the Tennessee Bureau of Investigation, testified that she tested the substances retrieved by Agent Biele, Agent Lewallen, and Assistant Director Daugherty. All three substances tested positive for cocaine base. Flowers further stated that the cocaine obtained by Agent Biele weighed 2.5 grams, the cocaine obtained by Agent Lewallen weighed .5 grams, and the golf-ball-sized rock obtained by Assistant Director Daugherty weighed 18.6 grams.

The appellant was convicted in the Marshall County Circuit Court of the following offenses:

Count 1: sale of 2.5 grams of crack cocaine
Count 2: delivery of 2.5 grams of crack cocaine (merged with count 1)
Count 3: sale of .5 grams of crack cocaine
Count 4: delivery of .5 grams of crack cocaine (merged with count 3)
Count 5: possession of 18.6 grams of crack cocaine with the intent to sell
Count 6: criminal impersonation
Count 7: criminal impersonation
Count 8: failure to appear.

The trial court sentenced the appellant as a Range II offender to eighteen years incarceration in the Tennessee Department of Correction for the convictions on counts 1 and 3 and ordered the appellant to serve these sentences concurrently with each other. The trial court also sentenced the appellant to eighteen years incarceration for the conviction on count 5 and ordered this sentence to run consecutively to counts 1 and 3. The trial court further sentenced the appellant to three years incarceration on count 8 and to eleven months and twenty-nine days for counts 6 and 7. The trial court ordered the appellant to serve his sentences for counts 6, 7, and 8 concurrently with each other but consecutively to counts 1, 3, and 5, for a total effective sentence of thirty-nine years. The trial court further ordered the appellant to serve these sentences consecutively to the appellant's outstanding sentence in Maury County. On appeal, the appellant raises the following issues for our review: (1) whether the evidence presented at trial was sufficient to sustain the appellant's convictions; (2) whether the trial court erred in failing to instruct the jury on the lesser-included offense of simple possession; and (3) whether the trial court erred in sentencing the appellant.

## II. Analysis
### A. Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence to support his convictions of sale of crack cocaine, delivery of crack cocaine, and possession of crack cocaine with intent to sell.[3] As a result of his criminal convictions in the trial court, the appellant bears a presumption of guilt on appeal. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Accordingly, the appellant must demonstrate to this court why the evidence produced at trial is insufficient to sustain his convictions. Id. To this end, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

As the prevailing party in the trial court, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, the trier of fact must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Fox, 733 S.W.2d 116, 117 (Tenn. Crim. App. 1987). Accordingly, a guilty verdict returned by the trier of fact accredits the testimony of the

---

[3] The appellant does not contest his convictions of criminal impersonation or of failure to appear.

State's witnesses and resolves all conflicts in testimony in favor of the State's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

In order to sustain the appellant's convictions on counts one and three of selling crack cocaine, the State needed to prove that the appellant knowingly sold .5 grams or more of any substance containing cocaine, a controlled substance. Tenn. Code Ann. § 39-17-417(a)(3) and (c)(1) (1997). To prove count one, Agent Biele testified that the appellant sold him crack cocaine in exchange for $200. Flowers testified that the crack cocaine obtained by Agent Biele weighed 2.5 grams. Additionally, to establish count three, Agent Lewallen testified that the appellant provided crack cocaine in exchange for $100. Flowers testified that the crack cocaine obtained by Agent Lewallen weighed .5 grams. A jury could have easily found the appellant guilty of the sale of crack cocaine beyond a reasonable doubt on counts one and three. This issue is without merit.

To support the appellant's conviction of possession of crack cocaine with intent to sell, the State needed to demonstrate that the appellant had knowingly possessed over .5 grams of crack cocaine with the intent to sell that crack cocaine. Tenn. Code Ann. § 39-17-417(a)(4) and (c)(1). Tenn. Code Ann. § 39-17-419 (1997) provides that "[i]t may be inferred from the amount of a controlled substance . . . possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance . . . [was] possessed with the purpose of selling or otherwise dispensing."

Assistant Director Daugherty asserted that a $20 piece of crack cocaine would weigh .1 or .2 of a gram. Accordingly, one gram of crack cocaine contains about five $20 rocks of crack cocaine. Flowers testified that the amount of crack cocaine retrieved by Assistant Director Daugherty weighed 18.6 grams. Additionally, Agent Biele and Agent Lewallen testified that the appellant cut the rocks he sold Agent Lewallen from the large 18.6 gram rock later retrieved by Assistant Director Daugherty. Moreover, the 18.6 gram rock was found in a bush the appellant had crouched beside during the police pursuit. Therefore, a jury could reasonably conclude that the appellant possessed the 18.6 gram rock of crack cocaine with the intent to sell. See State v. Holbrooks, 983 S.W.2d 697, 702 (Tenn. Crim. App. 1998).

### B. Lesser-Included Offense Instruction

The appellant alleges that the trial court erred in failing to instruct the jury on simple possession. Initially we note that it is unclear from the appellant's brief if the appellant is complaining of the trial court's failure to instruct on simple possession as a lesser-included offense of the sale of crack cocaine, delivery of crack cocaine, the possession of crack cocaine with intent to sell, or all three. Nevertheless,

> [a] trial court's duty to charge juries as to the law of each offense "included" in an indictment has been statutorily mandated in this State for some time. We recently interpreted this provision to mean that "a trial court must instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense." This mandate to charge lesser-

included offenses applies whether or not [an appellant] requests such an instruction.

State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (citations omitted). In other words, the trial court is required to instruct the jury on a lesser-included offense, even if such instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense." Id. at 469. However, we conclude that the trial court did not err in failing to give the instruction on simple possession.

In analyzing the appellant's claim, we must begin by determining whether simple possession is a lesser-included offense of the sale of crack cocaine, delivery of crack cocaine, or possession of crack cocaine with the intent to deliver. Burns contains the current lesser-included offense analysis utilized by this court. Id. In applying the Burns test, we must consider the following definition of a lesser-included offense:

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of a lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-467; see also State v. Jason C. Carter, et al., No. M1998-00798-CCA-R3-CD, 2000 WL 515930, at *8, (Tenn. Crim. App. at Nashville, April 27, 2000), perm. to appeal denied, (Tenn. 2000).

As we stated earlier, Tenn. Code Ann. § 39-17-417(2) and (3) provide that it is an offense for an appellant to knowingly deliver or sell a controlled substance. In defining simple possession, Tenn. Code Ann. § 39-17-418(a) (1997) provides that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance." Using the Burns analysis, we conclude that simple possession is a lesser-included offense of the sale of and delivery of crack cocaine under part (a) of the Burns test.

-6-

After determining that simple possession is a lesser-included offenses of the sale and delivery of crack cocaine, we must conduct a two-part inquiry to determine whether the jury should have been instructed on that offense. Burns, 6 S.W.3d at 469.

> First, [we] must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, [we] must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, [we] must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id.

In analyzing whether the jury should have been instructed on simple possession as a lesser-included offense of the sale and delivery of the crack cocaine, this court has stated that,

> [b]ecause simple possession only requires that a person "knowingly possess" a controlled substance and because other [statutes] make it an offense to knowingly sell or otherwise dispose of a controlled substance, it follows that the offense of simple possession contemplates possession of a controlled substance without selling or otherwise disposing of the substance.

State v. Tambora N. Simmons, No. 03C01-9905-CR-00188, 2000 WL 190230, at *5 (Tenn. Crim. App. at Knoxville, February 16, 2000), perm. to appeal denied, (Tenn. 2000). Accordingly, because the evidence overwhelmingly established that the appellant sold and delivered the crack cocaine to Agent Biele and Agent Lewallen for cash, "reasonable minds could not accept the proposition that the [appellant] merely possessed the [crack cocaine]." Id. Therefore, the trial court did not err in failing to give the instruction on simple possession as a lesser-included offense of the sale or delivery of crack cocaine. See State v. Michael Brown, No. 01C01-9711-CC-00518, 1999 WL 743610, at *5 (Tenn. Crim. App. at Nashville, September 24, 1999).

Additionally, it is clear that simple possession satisfies part (a) of the Burns test as a lesser-included offense of possession with intent to sell. However, in deciding whether the trial court erred in failing to instruct the jury on simple possession, we note that there were no facts introduced at trial to suggest that the appellant possessed the 18.6 gram rock of crack cocaine for his personal use. The evidence established that the appellant cut pieces from the larger rock and sold them to Agent Lewallen. Reasonable minds could only conclude that the appellant possessed the rest of the rock with the intent to sell. Because none of the facts support charging the jury with simple possession, we conclude that the trial court did not err in failing to instruct the jury on simple possession. See State v. George Rose, No. 02C01-9710-CR-00405, 1998 WL 351198, at *5 (Tenn. Crim. App. at Jackson, July 2, 1998). This issue is without merit.

### C. Sentencing

When either a defendant or the State challenges the length, range, or manner of service of a sentence, this court conducts a de novo review of the record. Tenn. Code Ann. § 40-35-401(d) (1997). Moreover, if the record reflects that the trial court correctly considered the relevant

sentencing principles, we will accord the trial court's findings a presumption of correctness. Id., State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Furthermore, the appellant, as the appealing party, bears the burden of demonstrating the impropriety of the sentences imposed. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

This court considers the following factors in conducting our de novo review of the appellant's sentences: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103,-210 (1997). See also Ashby, 823 S.W.2d at 168. Because the record reflects that the trial court adequately considered the aforementioned factors in sentencing the appellant, we accord the trial court's decision a presumption of correctness.

1. Range

The appellant first contends that the trial court erred in sentencing him as a Range II offender because the State did not file any notice of enhanced punishment ten days prior to trial as required by Tenn. Code Ann. § 40-35-202(a) (1997). The appellant argues that there is no written notice in the record of the State's intent to seek enhanced punishment. We disagree.

Initally we note that the appellant's trial began on November 29, 1999. Included in the technical record is a copy of the State's Notice of Enhancement which was delivered to defense counsel on August 16, 1999. Additionally, the State delivered an Amended Notice of Enhancement to defense counsel on September 3, 1999. Both notices include the nature of the prior felony convictions, the dates of the convictions, and the identity of the courts of the convictions, in compliance with Tenn. Code Ann. § 40-35-202. Accordingly, the State provided the appellant with more than the required ten days notice. Additionally, the appellant's statement of the case in his appellate brief concedes that the State provided him with notice in August and September of 1999. Furthermore, we also note that the appellant has two prior felony convictions, qualifying him as a Range II offender. Tenn. Code Ann. § 40-35-106(a)(1) (1997). Thus, the trial court properly sentenced the appellant as a Range II offender. This issue is without merit.

The appellant also appears to argue that the trial court incorrectly applied enhancement factors and failed to apply mitigating factors. However, because the appellant only makes a conclusory statement without citing case law or alleging specific facts in support of this argument, the appellant has waived this issue. See State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988).

However, we note, as plain error, that the trial court sentenced the appellant to eleven months and twenty-nine days incarceration for each of his convictions of criminal impersonation. See Tenn. R. Crim. P. 52(b). Criminal impersonation is a class B misdemeanor. Tenn. Code Ann. § 39-16-301(b) (2000 Supp.). The maximum term of incarceration a trial court may impose for a class B misdemeanor is six months. Tenn. Code Ann. § 40-35-111(e)(2) (1997). Accordingly, we

modify the appellant's judgments for his criminal impersonation convictions to reflect sentences of six months incarceration in the Marshall County Jail.

## 2. Consecutive Sentences

The appellant also contends that the trial court erred by imposing consecutive sentences. Specifically, the appellant alleges that the trial court erred in failing to consider the factors set out in State v. Wilkerson, 905 S.W.2d at 938 (Tenn.1995), when ordering the appellant to serve consecutive sentences.

Tenn. Code Ann. § 40-35-115(b) (1997) provides that, if the appellant meets one of the listed criteria, a trial court may impose consecutive sentencing. Moreover, if the trial court determines that consecutive sentencing is appropriate because the appellant is a dangerous offender, the court must also find that the sentence reasonably relates to the severity of the appellant's offenses and that confinement is necessary to protect society from further criminal conduct by the appellant. See State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); Wilkerson, 905 S.W.2d at 938.

In the present case, the trial court imposed consecutive sentencing because the appellant had an extensive criminal history and because he committed the present offense while on probation. Tenn. Code Ann. § 40-35-115(b)(2)and(6).[4] There was no finding that the appellant is a dangerous offender. As a factual basis for the application of factors (2) and (6), the trial court noted that Assistant Director Daugherty and Agent Biele testified at the sentencing hearing that, while in custody, the appellant confessed to other recent drug sales for which he had not been charged. Additionally, the trial court observed that the appellant was on probation in Maury County at the time the appellant committed the instant offenses. Thus, the appellant was eligible for consecutive sentencing. Id.

However, the appellant contends that the trial court erred in not finding on the record that the sentence reasonably relates to the severity of the appellant's offenses and that confinement is necessary to protect society from further criminal conduct by the appellant pursuant to Wilkerson. Contrary to the appellant's contention, because the trial court did not find that the appellant was a dangerous offender, the trial court was not required to apply the Wilkerson factors. Lane, 3 S.W.3d at 460-61. Accordingly, we conclude that the trial court properly ordered consecutive sentences.

### III. Conclusion
Based upon the foregoing, we affirm the judgments of the trial court as modified.

---

[4] We note that, although the trial court found that two of the factors for permissive consecutive sentencing applied to the appellant, the trial court needed only to find one of the statutory factors in order to impose consecutive sentences upon the appellant. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

_____
NORMA McGEE OGLE, JUDGE